■ In the Matter of ALBERT T., a Child Alleged to be Permanently Neglected. ROSE PANDOZY, as Commissioner of the Clinton County Department of Social Services, Respondent; NANCY T., Appellant.—Crew III, J. Appeal from an order of the Family Court of Clinton County (McGill, J.), entered January 14, 1991, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate Albert T. a permanently neglected child.

Respondent is the natural mother of Albert T. (born Dec. 1985). In November 1986, respondent and her roommate were charged with assault in the second degree based upon respondent's admission that they struck Albert with a stick. Respon-

dent entered a guilty plea and voluntarily placed Albert in the custody of petitioner. Petitioner subsequently commenced a neglect proceeding pursuant to Family Court Act article 10 and, in May 1987, Albert was found to be a neglected and abused child. Custody was continued with petitioner for an additional 18 months and respondent was granted supervised visitation and directed to attend, *inter alia,* parenting classes. An additional extension of placement was granted in November 1988.

On or about December 8, 1989, petitioner commenced this permanent neglect proceeding seeking to terminate respondent's parental rights and free Albert for adoption. Respondent admitted, in open court, the first, second, third, fourth, fifth, 11th (a) insofar as able, 12th, 13th and 14th paragraphs of the petition. Prior to the start of the fact-finding hearing Albert's natural father, who was apparently the subject of a related proceeding, surrendered his parental rights. During the course of the hearing that followed, testimony was received from, among others, respondent and those caseworkers and mental health professionals involved in this proceeding. Family Court found Albert to be a permanently neglected child and, following a dispositional hearing, determined that it would be in Albert's best interest to terminate respondent's parental rights and place him in the custody and guardianship of petitioner until such time as he is placed for adoption. Respondent now appeals from Family Court's fact-finding order.

We affirm. Initially, we note that at the time the notice of appeal was filed in this matter, there was no appeal as of right from a nondispositional order of Family Court in a permanent neglect proceeding and this appeal, therefore, is subject to dismissal *(see, Matter of Tasha Renette E.,* 161 AD2d 226, 227; Family Ct Act § 1112 former [a]).* The parties, however, have not raised this defect and have instead stipulated to the contents of the record and fully briefed the issues. Accordingly, in the interest of justice, we *sua sponte* grant permission to appeal in order to determine this matter on the merits *(see, Matter of Discenza v Dann OO.,* 148 AD2d 196, 197-198, *lv dismissed* 75 NY2d 765).

The threshold inquiry in any permanent neglect proceeding is whether the petitioning agency has discharged its statutory

* Effective April 6, 1991, Family Court Act § 1112 (a) provides for an appeal as of right from "an intermediate or final order or decision" in a neglect proceeding (L 1991, ch 34).

duty to exercise diligent efforts to encourage and strengthen the parental relationship *(see,* Social Services Law § 384-b [7]; *Matter of Mary S.,* 182 AD2d 1026, 1027; *Matter of Jessica UU.,* 174 AD2d 98, 99; *Matter of Latasha W.,* 170 AD2d 318, 319). "Diligent efforts", in turn, means reasonable attempts to encourage a meaningful relationship between the parent and child and includes providing counseling, making suitable arrangements for visitation with the child, providing services and other assistance aimed at ameliorating or resolving the problems preventing discharge of the child to the parent's care and keeping the parent informed of the child's progress and development (Social Services Law § 384-b [7] [f]; *see, Matter of Devon C.,* 186 AD2d 738; *Matter of Jessica UU., supra,* at 100).

Here, the record reveals that petitioner's caseworkers assisted respondent, on more than one occasion, in locating suitable housing by providing respondent with various leads on apartments, access to a telephone and transportation. Additionally, services from the Early Infant Intervention Program were provided to assist respondent in learning developmental stages, appropriate activities and discipline and supervision techniques for Albert. Respondent was also assigned a homemaker to provide guidance in personal hygiene and child care, budgeting, nutrition, grocery shopping and housekeeping. Regular visits between respondent and Albert were arranged and transportation or bus fare was made available. Respondent was also notified of and invited to monthly meetings and service plan reviews, and it is clear from the testimony of petitioner's caseworkers that respondent was repeatedly advised as to the specific steps she needed to take to secure the return of her son. Plainly, petitioner identified the particular problems facing respondent and made "affirmative, repeated, and meaningful efforts" to assist respondent in overcoming them *(Matter of Sheila G.,* 61 NY2d 368, 385; *see, Matter of Salvatore TT.,* 159 AD2d 809, 810; *Matter of Christina Q.,* 156 AD2d 770, 772, *lv denied* 75 NY2d 708). We therefore conclude that petitioner established by clear and convincing evidence that it satisfied its statutory duty in this regard. Respondent's arguments regarding the alleged deficiencies in these services have been examined and found to be lacking in merit.

Respondent next contends that petitioner failed to establish by clear and convincing evidence that Albert was a permanently neglected child. We cannot agree. A permanently neglected child is a child in the custody of an authorized

agency whose parent has failed, for a period of more than one year, to "substantially and continuously or repeatedly * * * maintain contact with *or* plan for the future of the child, although physically and financially able to do so" (Social Services Law § 384-b [7] [a] [emphasis supplied]). As we have previously observed, "contact and planning are alternative elements, and proof of failure to perform one is sufficient to sustain a finding of permanent neglect" *(Matter of Scotty C., 154 AD2d 784, 786, lv denied 75 NY2d 707; see, Matter of Travis Lee G., 169 AD2d 769, 770).*

The record reveals and petitioner concedes that respondent consistently maintained contact with Albert. The record also reveals, however, that although respondent cooperated with petitioner's caseworkers and did make some progress in certain areas, she failed to plan for Albert's future despite having ample opportunity to do so. To satisfy the planning requirement, respondent needed to take such steps as were necessary to provide an adequate, stable home and parental care for Albert *(see, Matter of Terry S., 156 AD2d 763, 765; Matter of Scotty C., supra, at 786).* Specifically, respondent was required to remove "destructive tendencies" from her life *(see, Matter of Travis Lee C., supra, at 770)* and address and correct those problems preventing Albert's return *(cf., Matter of Crystal Q., 173 AD2d 912, 913, lv denied 78 NY2d 855; Matter of Terry S., supra, at 766).* This respondent did not do.

One of the primary obstacles to Albert's return was respondent's live-in paramour, who had been convicted of endangering the welfare of a child. (According to respondent's paramour, he "accidentally" hit the child while "beating on" the child's mother.) Despite the fact that respondent was assaulted in her paramour's presence and he failed to come to her aid, respondent continued to reside with him and even moved to locations that were unsuitable for raising a child in order to be with him. Petitioner's caseworkers testified and respondent acknowledged that she was advised on more than one occasion that her continued association with this individual would jeopardize any future she might have with Albert. Respondent, however, was apparently unable or unwilling to address this issue and her failure to do so constitutes a failure to provide a safe and stable home for her child. In sum, contrary to respondent's contention, the record provides clear and convincing evidence to support Family Court's finding of permanent neglect *(see generally, Matter of Christina Q., 156 AD2d 770, 772-773, supra).*

Yesawich Jr., J. P., Levine, Mahoney and Harvey, JJ.,

concur. Ordered that permission to appeal is granted, *sua sponte.* Ordered that the order is affirmed, without costs.