■ In the Matter of MICHAEL RR. et al., Children Alleged to be Permanently Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CHRISTINE SS., Appellant. [635 NYS2d 736] —Cardona, P. J. Appeal from an order of the Family Court of Tompkins County (Friedlander, J.), entered December 17, 1993, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights.

In December 1990, Family Court determined that respondent had neglected and abused two of her children. The children, twin boys born in 1990, were placed in foster care and remain there now. Service plans aimed at returning the children to respondent were devised. In March 1992, however, petitioner filed a permanent neglect petition alleging that respondent had failed to plan for the children's return. Nevertheless, petitioner continued to work with respondent. After a series of apparent setbacks, petitioner filed an amended petition in January 1993 seeking the same relief. Following a fact-finding hearing, Family Court granted the petition. A dispositional hearing was held, after which the court terminated respondent's parental rights. This appeal by respondent followed.*

We affirm. Initially, the record reveals clear and convincing evidence that petitioner satisfied its statutory duty to make diligent efforts to strengthen the parental relationship (*see*, Social Services Law § 384-b [7] [a]; *Matter of Michael BB.*, 206 AD2d 600, 601). These included arranging visitation, counseling, parenting skill classes and providing a parent aide, as well as alcohol and substance abuse therapy. In addition, petitioner provided transportation for respondent and assisted in locating housing for her. Moreover, petitioner's caseworkers maintained

---

* The children's father was also originally a named respondent; he, however, did not oppose an adjudication of permanent neglect.

frequent personal and telephone contact with respondent. The assistance and services provided were aimed at ameliorating the "particular problems facing respondent and [petitioner] made 'affirmative, repeated and meaningful efforts' to assist respondent in overcoming them" (*Matter of Albert T.*, 188 AD2d 934, 936, quoting *Matter of Sheila G.*, 61 NY2d 368, 385).

It was respondent's obligation to use the services provided and to take the initiative and responsibility to plan for the children's futures (*see, Matter of Jessica MM.*, 122 AD2d 462, 463, *lv denied* 68 NY2d 612). Petitioner was not required to guarantee respondent's success at overcoming her problems (*see, supra*, at 463). Respondent was obligated to remove the destructive tendencies in her life and to take the necessary steps to correct the conditions that led to the removal of the children in the first place (*see, Matter of Orange County Dept. of Social Servs. v Joann P.*, 195 AD2d 512, *lv denied* 82 NY2d 658; *Matter of Travis Lee G.*, 169 AD2d 769, 770). As we have noted, "a parent must take real, affirmative and *meaningful* steps manifesting a sense of responsibility toward the children in placement so as to avoid a termination of parental rights" (*Matter of Matthew C.*, 216 AD2d 637, 638 [emphasis supplied]).

Here, respondent attended most of the offered rehabilitative programs and took advantage of the services provided to her. Nevertheless, the record supports Family Court's conclusion that the parenting problems that existed when the children were removed were still present and had not substantially improved. For instance, the children were originally removed due to serious injuries for which respondent failed to offer any adequate explanation. After the children's removal, on at least one occasion, during visitation with respondent, one of the children sustained physical injuries requiring medical attention which respondent failed to provide. The child was diagnosed as having suffered a second degree burn on his hand. Respondent failed to adequately explain why she did not seek medical attention. One of respondent's counselors at a parenting program that respondent attended stated that, although respondent's responses were appropriate, she was concerned whether respondent actually understood the parenting techniques being taught. Furthermore, there was evidence that, despite attending parenting classes, respondent continued to use questionable forms of punishment which raised serious questions about her ability to properly deal and relate to her children.

There was also evidence that the children's father, with whom respondent was residing at the time of the initial

injuries, physically abused respondent. Although she eventually separated from him, the record indicates that respondent began a relationship with another man who, on at least one occasion, hit her and pushed her down a flight of stairs. As Family Court noted, respondent was not forthcoming in discussing the extent of her second relationship and the record supports Family Court's conclusion that this raised doubts as to respondent's willingness to "address important problems pertaining to herself and the future of her children" (see, Matter of Michael BB., 206 AD2d 600, 601, supra; Matter of Orange County Dept. of Social Servs. v Joann P., 195 AD2d 512, 512-513, supra).

In sum, there is clear and convincing evidence to support Family Court's conclusion that the main objectives of the plan were not met and that respondent failed to sufficiently and meaningfully plan for the children's future (see, Matter of Albert T., 188 AD2d 934, 937, supra). As the court noted, good-faith efforts are not determinative of whether a parent has adequately met the obligation to develop a viable plan (see, Matter of Candie Lee W., 91 AD2d 1106, 1108). The record reveals an inability on respondent's part to implement the techniques that she learned from the offered classes and programs. In reaching this result, we are also mindful that children should not be permitted to linger in foster care. As the Court of Appeals has emphasized, "foster care is viewed as a temporary way station to adoption or return to the natural parents, not the purposeful objective for a permanent way of life" (Matter of Joyce T., 65 NY2d 39, 48). Prolonged foster care is not in a child's best interest (see, supra, at 47) and where, as here, it is clear that a parent is not making meaningful progress by effectively utilizing the available services, that parent cannot avoid a termination of parental rights.

Turning to respondent's remaining arguments, we find that they have either been unpreserved for review or are lacking in merit.

Mikoll, Crew III, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.